UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

| IRMON C. WILLIAMS #317017, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 2:08-cv-285 |
| | ) | |
| v. | ) | Honorable R. Allan Edgar |
| | ) | |
| JENNIFER GRANHOLM, et al., | ) | |
| | ) | **OPINION** |
| Defendants. | ) | |
| | ) | |

**I. Facts**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff Irmon C. Williams #317017, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Governor Jennifer Granholm, MDOC Director Patricia Caruso, Warden Gregory McQuiggin, Deputy Warden Linda Tribley, Assistant Deputy Warden William Leutzow, Gloria Hill R.N., Dr. Richard Miller, Kathleen Hornton R.N., .Resident Unit Manager Kathy Meni, Assistant Resident Unit Supervisor Tammy Gajewski, Assistant Resident Unit Supervisor Brandon Sweeney, Assistant Resident Unit Supervisor Gina Healey, Assistant Deputy Warden Dan Lesatz, Resident Unit Manager William Jondreau, Assistant Resident Unit Supervisor Darren Gerard, and Resident Unit Officer Robert Majourn. On January 9, 2009, the court dismissed Plaintiff's claims against Defendants Granholm and Caruso for lack of merit, and ordered service of the complaint with regard to the remaining Defendants. As of this date, service remains unexecuted as to Defendants Hornton, Miller, Majourn, Meni, and Leutzow.

Plaintiff's complaint alleges that he has suffered from severe asthma for most of his life which causes him to suffer serious, and at times near fatal, asthma attacks. Plaintiff has been incarcerated within the MDOC since July 2, 2002, where he has been treated for his asthma by MDOC medical personnel and emergency room personnel. On June 13, 2005, Plaintiff was assessed by Michael R. Engelsgierd, M.D., who gave Plaintiff a special accommodation notice requiring that he (1) be housed in a tobacco free housing unit (2) in a ground floor room, and that he be (3) assigned to a bottom bunk for the duration of his incarceration. Plaintiff claims that he was transferred to AMF on May 9, 2006, and that Defendants have since violated his special accommodation notice, which has caused him to suffer numerous severe asthma attacks. Plaintiff seeks both damages and equitable relief.

## II. Analysis

### A. Standard of Review

Presently before the Court is the Motion for Summary Judgment filed by Defendants Gajewski, Gerard, Healey, Hill, Jondreau, Lesatz, McQuiggin, Sweeney, and Tribley, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The

nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

### B. Exhaustion of administrative remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W.

SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance

to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendant assert that Plaintiff filed one grievance in January of 2007, in which he asserts that only one of his Special Accommodations had been met. However, Defendants note that in that grievance, Plaintiff failed to specify any particular individual or dates in which the alleged violations occurred. (Defendants' Exhibit 14.) Plaintiff filed another grievance in July of 2008, in which Plaintiff failed to specifically name any of the Defendants, or to set forth any specific dates on which he spoke to anyone regarding the alleged denial of his Special Accommodations. (Defendants' Exhibit 29.)

As noted by Defendants, a prisoner must specifically mention the involved parties in the grievance to alert the prison officials of the problems so that the prison has a chance to address the claims before they reach federal court. *Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006); *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). Therefore, any failure by Plaintiff to name the Defendants in his grievances would constitute a failure to exhaust administrative remedies.

In response to Defendants' assertions regarding exhaustion, Plaintiff contends that he named Defendants Lesatz and Sweeney in a grievance, as well as Defendants McQuiggin, Tribley, and Hill in an unprocessed grievance which he placed in the outgoing mailbox in AMF housing unit 5. Plaintiff stated that this was an attempt to file the grievance pursuant to the established procedure and rules. Finally, Plaintiff asserts that he has named Defendants Healey, Gerard, Gajewski, and

Jondreau by their titles, Assistant Resident Unit Supervisor, Resident Unit Manager, Assistant Deputy Warden, Deputy Warden, Warden, Administration, and Health Unit Manager, in multiple grievances. Plaintiff asserts that Defendants are known by their official titles and that his grievances gave the prison an opportunity to address the claims before they reach federal court in compliance with the exhaustion requirement.

In the opinion of the undersigned, there is a genuine issue of material fact regarding whether Plaintiff exhausted his administrative remedies as to the Defendants. Therefore, Defendants are not entitled to summary judgment for failure to exhaust administrative remedies.

### C. Qualified Immunity

Defendants claim that they are entitled to qualified immunity because Plaintiff cannot show that thier conduct violated his rights under the United States Constitution. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly

violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Defendants assert that they are entitled to summary judgment on Plaintiff's claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131. Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, Plaintiff must show that he is a "qualified person," that he has a "disability," and that he was denied a "service, program, or activity" of the state. In the ADA, the term "disability" is defined as, with respect to an individual: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Therefore, in order to state a claim under the ADA, Plaintiff must show that discriminated against on the basis of his disability. As noted by Defendants, Plaintiff's claims are that he was wrongfully exposed to Environmental Tobacco Smoke (hereafter referred to as ETS), which caused him to suffer asthma attacks. Such a claim does not implicate the ADA.

Plaintiff also appears to be claiming that Defendants conduct violated his Eighth Amendment rights. When prison officials ignore a prisoner's serious medical condition such as allergy or asthma relating to second-hand smoke and do not make a good-faith effort to enforce non-smoking policies or to segregate a prisoner from exposure to smoke, a prisoner may state an Eighth

Amendment claim based upon exposure to environmental tobacco smoke. *See Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005)(citing *Hunt v. Reynolds*, 974 F.2d 734, 726 (6th Cir. 1992)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

*Helling v. McKinney,* 509 U.S. 25 (1993) is the seminal Supreme Court case in this area. In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to ETS from a cellmate[1] posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The Supreme Court affirmed the decision of the Court of Appeals to remand the case to the district court to allow the prisoner an opportunity to prove his case, which also required the prisoner to prove both the subjective and objective elements necessary for an Eighth Amendment violation. *Id*. Relevant to the objective element is whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to the subjective element is whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id*. at 36.

---

[1]The cellmate in *Helling* smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 35.

Plaintiff claims that he repeatedly informed Defendants of his medical need to be free from ETS. However, in their affidavits, Defendants deny that Plaintiff ever specifically informed them of his medical needs in general, or as they related to his cell assignment. (Defendants' Exhibits 4-12.) Defendant Hill attests that Plaintiff received treatments and medical attention on numerous occasions for his asthma, and that on April 26, 2007, the medical provider wrote an order to have Plaintiff moved from his housing unit when chemical agents were going to be used. (Defendants' Exhibit 8.)

Defendant Tribley attests that Plaintiff's assertion that he was placed in a smoking unit is untrue, as all housing units at the facility are non-smoking units. In addition, effective February 1, 2009, tobacco may not be possessed by staff or prisoners in any correctional facility operated by the MDOC. Defendant Tribley also states that had health care requested a transfer on Plaintiff's behalf, she would have arranged for the transfer. (Defendants' Exhibit 5.) Defendant Lesatz attests that during the time period referenced in Plaintiff's complaint, smoking was not allowed in any of the housing units. (Defendants' Exhibit 6.) Defendant Jondreau attests that during the time that Plaintiff was housed at AMF, all housing units in the facility were non-smoking. (Defendants' Exhibit 8.)

Defendant Sweeney attests that during the time that Plaintiff was housed in unit 7, where Sweeney was Assistant Resident Unit Supervisor, Plaintiff failed to tell him that he had any special accommodation for bottom floor, bottom bunk, tobacco free housing, or that he needed a fan. Plaintiff was assigned to cell 7-104, which is located on the bottom gallery of the unit. The cells are single man, so there is no top bunk in the cell. In addition, Defendant Sweeney states that all housing units are non-smoking and that staff strictly enforces the smoking prohibition. (Defendants' Exhibit 10.)

According to Plaintiff's medical records, which appear to be voluminous, he suffered from numerous asthma attacks, which required breathing treatments, as well as periodic trips to the hospital emergency room. (Defendants' Exhibit 41.) However, as noted by Defendants, Plaintiff suffered from asthma attacks long before he was incarcerated at AMF. (Defendants' Exhibit 41.)

On May 14, 2006, Plaintiff had an officer contact health services because he was having an asthma attack and needed "that breathing machine." When the Nurse Kathleen Hornick arrived in the unit, she observed Plaintiff sitting in the office with the Corrections Officers laughing and talking. Plaintiff denied shortness of breath and wheezing and declined an examination. Plaintiff stated that he just wanted his Albuterol inhaler, which had been ordered, but had not yet arrived. (Defendants' Exhibit 41, p. 181.) Plaintiff received frequent medical attention in the following months for his asthma. (Defendants' Exhibit 41, pp. 182-206.) On August 11, 2006, Plaintiff reported to staff that the cooler weather seemed to have brought him some relief. (Defendants' Exhibit 41, p. 207.)

As noted above, the housing units at AMF were all designated non-smoking during the pertinent time period. In addition, Defendant Sweeney attests that staff strictly enforced the smoking prohibition. The medical record shows that Plaintiff's requests for medical treatment were responded to in a timely manner, and Plaintiff was provided appropriate treatment as needed for his asthma. In addition, the record in this case does not support a finding that Defendants knowingly placed Plaintiff him in a housing unit where smoke was hovering or with extremely high heat levels. Therefore, Plaintiff has failed to show that he endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency, or that Defendants had exhibited deliberate indifference with regard to the dangers of a Plaintiff's exposure to ETS. *Helling*, 509 U.S.

at 36. Accordingly, the court concludes that Defendants' conduct did not violate Plaintiff's rights under the Eighth Amendment.

### D. Eleventh Amendment

Defendants McQuiggin and Tribley assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[2] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

### III. Conclusion

---

[2] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

In light of the foregoing, the court concludes that Defendants McQuiggin, Lesatz, Tribley, Gajewski, Sweeney, Jondreau, Gerard, and Hill are entitled to summary judgment. Accordingly, the court will grant their Motion for Summary Judgment (Docket #29).

In addition, the court notes that Richard Miller, Kathleen Hornton, Kathy Meni, William Luetzow, Robert Majourn, and John Doe were never served. Therefore, these individuals are not parties to this action and the case is properly dismissed in its entirety.

An Judgment consistent with this Opinion will be entered.


Dated:     3/12/2010                                        /s/ R. Allan Edgar
                                                            R. ALLAN EDGAR
                                                            UNITED STATES DISTRICT JUDGE